IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE McCOY,

        Plaintiff,                         No. CIV S-09-0441 DAD

        v.

MICHAEL J. ASTRUE,                  ORDER
Commissioner of Social Security,

        Defendant.
                                 /

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and remand. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        On February 13, 2002, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning June 22, 1988, based on depression, anxiety, and stress. (Transcript (Tr.) at 41, 57-59.) Plaintiff's application was denied initially in May 2002 and upon reconsideration in September 2002. (Tr. at 41-44, 48-51.) A hearing was held before Administrative Law Judge (ALJ)

1

Antonio Acevedo-Torres on May 1, 2003. (Tr. at 52, 265-82.) Plaintiff, who was represented by counsel, testified at the hearing. (Tr. at 265-66.) In a decision issued on June 10, 2003, the ALJ found plaintiff not disabled. (Tr. at 19-29.) The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 1993.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. Claimant had the following medically determinable impairment(s):  major depression without psychotic features.
>
> 4. The claimant did not have any impairment or impairments that significantly limited his ability to perform basic work-related activities; therefore, the claimant did not have a severe impairment (20 CFR § 404.1521).
>
> 5. The claimant was not under a "disability" as defined in the Social Security Act, at any time on or before December 31, 1993, the date he last met the disability insured status requirements.

(Tr. at 28-29.)

On June 26, 2003, plaintiff's counsel requested review of the ALJ's decision. (Tr. at 9.) On October 12, 2007, after four years of correspondence from plaintiff's counsel regarding the status of plaintiff's request for review, the Appeals Council finally dismissed the request as untimely. (Tr. at 12-14.) Plaintiff's counsel immediately advised the Appeals Council that the request for review had been timely filed and requested that the Appeals Council reconsider its dismissal. (Tr. at 9-11.) After receiving no response, plaintiff filed suit in federal court on December 11, 2007, requesting that the court instruct the Appeals Council to issue an order on the merits of plaintiff's request for review. (Case No. CIV-07-2685 GGH, Compl.) After the suit was commenced, the Commissioner offered to deem plaintiff's request for review to be timely filed. On October 31, 2008, the court dismissed the lawsuit as moot but without prejudice to plaintiff's ability to return to court should it be necessary to enforce the Commissioner's promise. (Id., Order at 2.)

On December 18, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's June 10, 2003 decision. (Tr. at 7-11.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 16, 2009.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been

summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff seeks an order reversing the Commissioner's decision and remanding his case for a new hearing. Plaintiff asserts four principal errors in the Commissioner's decision. First, the ALJ erred when he found at step two of the sequential evaluation that plaintiff did not have any severe impairment. Second, the ALJ did not use the services of a medical advisor to determine onset of disability, did not re-contact plaintiff's treating physician, and did not permit lay witness testimony, thereby failing to fulfill his duty to develop the record. Third, the ALJ rejected the opinions of plaintiff's treating psychiatrists without a legitimate basis for so doing. Fourth, the ALJ rejected plaintiff's testimony and his wife's third party statements without having legitimate reasons for so doing.

4

The court finds that plaintiff is entitled to summary judgment on his claim that the ALJ erred when he found that plaintiff did not suffer from a any severe impairment. The ALJ's findings of fact in this regard are not supported by substantial evidence, and the proper legal standards were not applied.

At step two of the sequential evaluation process, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). Under the Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

"The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290). See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290).

Plaintiff cites extensive evidence in the record establishing that he suffered from major depression, bipolar disorder, attention deficit disorder (ADD), obsessive-compulsive

disorder, and/or anxiety prior to December 31, 1993, his date last insured.  Plaintiff alleges that these impairments gave rise to debilitating symptoms such as inability to concentrate, paranoia, and isolative behavior, which caused severe limitations in his ability to function on the sustained basis necessary for full-time, continuous employment at any exertional level.

        Ronald Diebel, M.D., treated plaintiff between June 21, 1988, and March 10, 1992, which encompasses a significant portion of the time between plaintiff's last day worked and his date last insured.  Dr. Diebel, who treated plaintiff 60 times between July 1988 and December 1991, diagnosed major depression without psychotic features secondary to work environment.  (Tr. at 226, 227, 228, 229, 230.)  Plaintiff's symptoms included difficulty remaining asleep, decreased appetite together with a 25-pound weight loss, impaired concentration, and low back pain, psychogenic.  (Tr. at 188.)  In a letter dated June 20, 1990, Dr. Diebel opined that plaintiff was severely traumatized by his treatment at Westinghouse, where he worked until June 1988, and that "the noxious stimuli from Westinghouse produced a major depression" that did not abate until plaintiff was no longer at Westinghouse.  (Tr. at 172-73.)  In 1990, it was Dr. Diebel's opinion that plaintiff "continues to be disabled" in terms of working for Westinghouse or any similar company.  (Tr. at 173.)  In a follow-up report dated January 28, 1991, Dr. Diebel diagnosed major depression in partial remission, some obsessive-compulsive features, a propensity to suffer neck pain, back pain, and itching when under occupational stress, and severe psychosocial stressors arising from occupational problems.  (Tr. at 186.)  It was Dr. Diebel's opinion that plaintiff could not return to the field of technical writing or to a job in a large corporation that would remind him of Westinghouse and therefore he needed to be retrained into a new occupation.  (Tr. at 186-87.)  In a note dated March 5, 1992, Dr. Diebel confirmed that plaintiff had been under his care since June 21, 1988, and that he had seen plaintiff regularly.  (Tr. at 170.)  In a March 10, 1992 follow-up report, Dr. Diebel reiterated his 1991 diagnoses and opinions.  (Tr. at 168-69.)

/////

During the time between June 22, 1988 and December 31, 1993, plaintiff was examined twice by Allan C. Sidle, Ph.D., M.D.  In 1989, Dr. Sidle met with plaintiff for three hours the first time and two hours the second time, and reviewed plaintiff's medical records.  (Tr. at 136-58.)  In a report dated April 3, 1989, Dr. Sidle diagnosed major depressive episode and extreme psychosocial stressors.  (Tr. at 155-56.)  In Dr. Sidle's opinion, "Dr. Diebel was correct in placing the patient on disability in June 1988," plaintiff quickly improved once away from the work environment and had no psychiatric symptoms at that time.  However, Dr. Sidle believed plaintiff was still precluded from returning to his old employment, and he believed that plaintiff's worker's compensation should include an award for future psychiatric treatment for anxiety that might arise in his search for finding alternative employment.  (Tr. at 158.)

A two-hour worker's compensation psychiatric examination was performed on plaintiff by R. Eugene Woods, M.D. on October 17, 1988, at the request of the insurance company.  Dr. Woods examined plaintiff for two and a half hours and reviewed some of plaintiff's medical records.  Dr. Woods did not believe that plaintiff had a diagnosable psychiatric problem, did not believe there was any disability, and believed that plaintiff could return to his former job.  (Tr. at 117-34.)

At the request of an insurance company, William R. McMaster, M.D., performed a "second opinion" examination of plaintiff on March 26, 1999, but had no medical records to review.  (Tr. at 163-64.)  Dr. McMaster observed plaintiff's anxiety and obsessive thinking.  (Tr. at 163, 165.)  Dr. McMaster diagnosed major depression by history, mixed personality disorder with obsessive-compulsive and passive-aggressive features, a psychosomatic back problem, and stress.  (Tr. at 166.)  Despite these diagnoses, Dr. McMaster found plaintiff capable of returning to work because plaintiff had remodeled his home, adapted to a new marriage, relocated to a different part of the state, and was able to exercise.  (Id.)

Other records after plaintiff's date last insured show that plaintiff continued to be diagnosed with and treated for severe mental impairment.  Treating records from the Veterans

Administration show that plaintiff was diagnosed in 2003 with bipolar II disorder, ADHD, obsessive-compulsive traits, paranoid traits, and ongoing legal and personal difficulties with his previous employer. (Tr. at 240.) Plaintiff scored 18 on the Bipolar Spectrum Diagnostic Scale when a score of 12 on that scale is a positive diagnosis for bipolar disorder. (Tr. at 238.) VA treatment notes reflect that plaintiff reported depression, memory problems, difficulties with sleeping, racing thoughts, difficulty concentrating, periods of agitation and anxiety, mild psychotic symptoms, previous issues with itching and back pain, prior diagnosis of stress, frustration, irritability, anxiety, moderately impaired functional status, and significant medical and psychiatric co-morbidity. (Tr. at 238, 241.) A doctor reported vegetative signs, i.e., depressed mood, difficulty sleeping, agitation, periods of decreased energy, and concentration difficulties. (Tr. at 240.) Plaintiff's medications included Depakote, used to treat the manic phase of bipolar disorder. (Tr. at 239.) Treatment records for June 2, 2004, showed diagnoses of bipolar II disorder and ADD. (Tr. at 243.) Plaintiff's symptoms at that time included irritation and agitation, difficulty with concentration, and a slightly lowered energy level. (Id.) Plaintiff was observed to be agitated, his mood was hyperthymic, his thought process was circumstantial to tangential, he occasionally lost his train of thought, and his thought content was somewhat rambling. (Id.) Dr. Eaton believed that plaintiff's symptoms were more related to ADD than to bipolar disorder, noting plaintiff's continued concentration difficulties, forgetfulness, disorganization, poor attention, and tendency to lose track of what he was saying. Dr. Eaton noted that plaintiff had been unable to work since June 1988 and had been significantly depressed and unable to function at times. He observed that plaintiff continued to have difficulty functioning and would have difficulty arriving at a job on a regular basis, would have difficulty relating to peers and supervisors, would have difficulty meeting production norms, becomes quite anxious around people and "in all likelihood is disabled." (Tr. at 244.)

On June 2, 2003, Alfred P. French, M.D., a Qualified Medical Evaluator, performed a psychiatric evaluation of plaintiff. The evaluation included an interview conducted

over a three-hour period, the administration of several tests, a review of plaintiff's medical file, and a review of reports prepared by plaintiff and his wife in connection with plaintiff's application for Social Security disability benefits. (Tr. at 245-47.) In Dr. French's opinion, there was no doubt that plaintiff was totally disabled because he suffers from Bipolar II, ADD, and Obsessive-Compulsive Disorder, complicated by paranoia, a combination of mental impairments that has resulted in "total destruction of most areas of normal function." (Tr. at 246.) Results from the Cognistat test indicated moderate-to-severe impairment of plaintiff's short-term memory. The Test of Variables of Attention (TOVA) revealed very strong evidence that plaintiff suffers from a deficit of his capacity to maintain sustained attention given a boring task. (Tr. at 254.) Plaintiff's performance on the MMPI-II and the MMPI-I tests led Dr. French to conclude that plaintiff experiences symptoms and problems consistent with a psychotic paranoid state complicated by depression and an unusually high level of social withdrawal. (Tr. at 253-55.) Results from the Rorschach by method of Exner showed that plaintiff "lacked the wherewithal to function in any setting." (Tr. at 255.) Dr. French found these results consistent with the records going back to 1989 and viewed the probability of malingering "so remote as to be virtually impossible." (Tr. at 256.) Dr. French diagnosed (1) Major Depression as complicated by racing thoughts and irritability, best described as Bipolar Disorder II; (2) severe impairment of attention and continual daydreaming, together with the abnormal TOVA test result, best diagnosed as Attention Deficit Disorder; (3) Obsessive Compulsive Disorder; (4) short-term memory impairment; (5) Paranoia. (Tr. at 256-57.) In an addendum to his report, Dr. French found it clear from the records and his own evaluation that plaintiff's disability began when he was dismissed from employment in 1988 "and continues to the present day." (Tr. at 253.)

Plaintiff argues that the ALJ erred when he conceded that plaintiff suffered from major depression but concluded that plaintiff did not suffer from any mental impairment that significantly limited his ability to perform basic work related activities. (Tr. at 29.) The court agrees. As set forth more completely above, basic work activities encompass "the abilities and

aptitudes necessary to do most jobs," including the ability to understand, carry out, and remember simple instructions, to use judgment, to respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). As summarized above, the evidence demonstrates that plaintiff is unable to concentrate, has memory problems that range from forgetfulness to a moderate-to-severe impairment of his short term memory, suffers from period of agitation and anxiety, would have difficulty relating to peers and supervisors, and would have difficulty meeting production norms.

The administrative record before the court provides extensive evidence that plaintiff suffers from a number of mental impairments that significantly limited his mental ability prior to December 31, 1993, to do basic work activities such as understanding, carrying out and remembering simple instructions, and responding appropriately to supervision, co-workers, and usual work situations. In reaching this conclusion, the court is mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54). See also Edlund, 253 F.3d at 1158. The court cannot find that plaintiff's mental impairments are "not severe" because the evidence of record does not establish that his impairments are merely slight abnormalities having no more than a minimal effect on plaintiff's ability to work. Certainly, this is not an instance in which a finding of no mental impairment at step two of the sequential evaluation process was justified by a total absence of objective evidence of a severe impairment or where even a claimant's own doctor was hesitant to conclude that the condition in question was legitimate. See Webb, 433 F.3d at 688.

The court finds that the ALJ improperly gave little weight to the opinions of Dr. Diebel, plaintiff's treating psychiatrist for almost four years. Dr. Diebel's opinions were neither cursory nor inconsistent with the record. His opinions are in fact consistent with the opinions of Dr. Eaton, plaintiff's treating physician at the VA, and the opinions of examining physicians Sidle and French. The inconsistent opinions are those of examining psychiatrists MacMaster, who had no medical records to review, and Woods, who had only "some" of plaintiff's records to

1  review.

2        It is well established that the medical opinions of treating physicians are entitled
3  to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d
4  418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a
5  treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at
6  830. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected
7  "only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396
8  (9th Cir. 1991)). If the treating doctor's opinion is contradicted by another doctor, the ALJ may
9  not reject the opinion without providing "'specific and legitimate reasons' supported by
10 substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499,
11 502 (9th Cir. 1983)).

12       Here, the ALJ did not provide specific and legitimate reasons, or clear and
13 convincing reasons, for rejecting the opinions of the treating physicians and the two examining
14 physicians who reviewed all the medical records. See Thomas v. Barnhart, 278 F.3d 947, 957
15 (9th Cir. 2002) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ
16 improperly relied on the opinions of two examining physicians who did not review plaintiff's
17 entire medical file. The ALJ's determination with respect to plaintiff's mental impairments is
18 not supported by substantial evidence in the record as a whole and must be reversed.

19       "[A]djudication must continue through the sequential evaluation process." SSR
20 85-28, 1985 WL 56856, at *3. Unfortunately, despite the length of delay during the
21 administrative proceedings in this case, remand is required so that an ALJ can proceed beyond
22 step two of the sequential evaluation process with respect to plaintiff's severe mental
23 impairments. See Webb, 433 F.3d at 688 (remanding for further proceedings where "[t]he ALJ
24 should have continued the sequential analysis beyond step two because there was not substantial
25 evidence to show that Webb's claim was 'groundless'").
26 /////

## CONCLUSION

In light of the remand required by the ALJ's error at step two, the court need not address plaintiff's remaining arguments. See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility."). Unfortunately, the record is not sufficiently developed for full consideration of those arguments at the present time. Cf. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

On remand, an ALJ shall recognize plaintiff's mental impairments as severe at step two and proceed with the sequential evaluation process. The medical opinions shall be given proper weight, and the subjective testimony of plaintiff, his wife, and his sister-in-law shall be properly considered.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's December 8, 2009 motion for summary judgment (Doc. No. 17) is granted;

2. Defendant's January 6, 2010 cross-motion for summary judgment (Doc. No. 20) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: September 26, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/mccoy0441.order